UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIM JON SEMMERLING and THE MERCURY ENDEAVOR, LLC, | ) ) ) |
| Plaintiffs, | ) No. 17 C 3021 ) ) Judge Gettleman |
| v. | ) ) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) |
| Defendants. | ) ) |

**UNITED STATES DEFENDANTS' MEMORANDUM
IN SUPPORT OF ITS MOTION TO DIMISS PLAINTIFFS' COMPLAINT**

**Introduction**

The complaint filed by plaintiffs Tim Semmerling and his company, The Mercury Endeavor, LLC, (collectively, "Semmerling") against the United States defendants[1] suffers from a multitude of fatal deficiencies and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). First, the common-law tort claims (which can be brought only against the United States) are governed by the Federal Torts Claims Act, and they should be dismissed because Semmerling did not exhaust administrative remedies. Second, the common-law tort claims should be dismissed because, even if exhausted, they are barred by the FTCA's intentional torts and foreign-soil exceptions. Third, these claims also fail because the defendants' conduct is protected by Illinois' absolute litigation privilege. Fourth, the claims are preempted by Semmerling's Title VII claim. Finally, the Title VII claim fails because Semmerling was not an employee of the United States, because he has not named the proper defendant, and because his claim is untimely.

---

[1] Although the United States has filed a notice of partial substitution and has substituted itself for the purposes of the FTCA claims (Dkt. 14), plaintiffs' Title VII claim is asserted against all of the defendants. Thus, this motion is brought on behalf of the "United States defendants," which includes all of the named defendants except Cheryl Bormann.

**Facts**

Plaintiff Tim Jon Semmerling is a "mitigation specialist"[2] and principal of the mitigation firm, The Mercury Endeavor, LLC. Compl. ¶¶ 2, 3, 23. Defendants Cheryl Bormann, Major Matthew H. Seeger, Michael A. Schwartz, and Edwin Perry are attorneys who are serving (or have served) on the criminal defense team for Walid bin Attash ("the accused")—one of the five men accused of plotting the 9/11 terrorist attacks and who is facing charges before a Military Commission convening at Naval Station, Guantanamo Bay, Cuba (the "Military Commission"). *Id.* ¶¶ 4, 5, 7, 8, 25. Specifically, Bormann is a private criminal defense attorney specializing in death-penalty defense, and she serves as the capital defense counsel for the accused.[3] *Id.* ¶ 4. Major Seeger, a Department of Defense ("DoD") military member, and Perry, a DoD civilian employee, are currently also serving as defense counsel for the accused. *Id.* ¶¶ 7, 8. Schwartz was a DoD military member and previously served as defense counsel for the accused. *Id.* ¶ 5. Brigadier General Baker, unlike the other individual defendants, has never represented the accused, but rather is the Chief Defense Counsel at the Military Commissions Defense Organization and, in that role, supervises all of the defense teams. *Id.* ¶ 6.

---

[2] Mitigation specialists are "individuals trained or experienced in the development and presentation of evidence for the penalty phase of a capital case." *Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation* (May 1998), Comment. A mitigation specialist "generally coordinates a multi-generational investigation of the defendant's family; identifies medical, psychological, and other issues requiring expert evaluation; and assists attorneys in locating experts and providing documentary materials for the experts to review." J. Gould & L. Greenman, *Report to the Committee on Defender Services, Judicial Conference of the United States: Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases* (September 2010) at 74.

[3] Under the Military Commissions Act of 2009, 10 U.S.C. § 949, *et seq.*, a defendant facing the death penalty has the right to an attorney "learned" in the procedures and substance of capital law. 10 U.S.C. § 949a(b)(2)(C)(ii). Bormann is the accused's "learned defense counsel."

Semmerling alleges that Bormann first contacted him in June 2011 and told him that she wanted to hire him as the mitigation specialist for the accused. *Id.* ¶ 25. Shortly thereafter, Semmerling and/or his company, Mercury Endeavor (the complaint is unclear), were hired by the "Military Commission Defense Organization" "as a contractor" to work as the mitigation specialist for the accused. *Id.* ¶¶ 23-26. ▮

▮

▮

▮

▮

▮

▮

▮

▮

▮

▮

▮

Semmerling claims that Brigadier General Baker ordered him to a meeting on October 23, 2015. *Id.* ¶ 46. Semmerling alleges that Brigadier General Baker directed Schwartz and Bormann to order Semmerling to leave Guantanamo. *Id.* ¶ 46. Semmerling claims that nearly six months after his dismissal—on April 28, 2016—▮

▮

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

Semmerling asserts that Schwartz, Bormann, Perry, and Seeger engaged in "character assassination" and it is "their objective to ensure Semmerling never works on a capital or military defense team again." *Id.* ¶ 51. Semmerling claims that the statements made to the accused and the defense team were false, that the statements damaged his professional reputation, and that he was wrongfully terminated because of his sexual orientation. *Id.* ¶¶ 56, 57, 59, 60, 66, 79.

Based on these events, Semmerling brought suit and asserts common-law claims for defamation (Count I- Defamation Per Se, Count II- Defamation, and Count III- Defamation Per Quod) and intentional infliction of emotional distress (Count V), as well as an employment discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*. (Count IV).

## Argument

### I. The FTCA Claims Should Be Dismissed.

Semmerling's tort claims suffer from a laundry list of deficiencies. As a preliminary matter, the FTCA is the *exclusive* jurisdictional basis for the plaintiffs' tort claims against the United States. Dkt. 14, Not. Partial Sub. ¶ 3. To the extent that Semmerling alleges that employees of the United States or governmental agencies committed common-law torts, any such claims are governed by the FTCA. 28 U.S.C. §§ 1346(b), 2679(b)(1), 2679(d)(1); *Duffy v. United States*, 966 F.2d 307, 313 (7th Cir. 1992). Thus, because the United States is the only proper party defendant to an FTCA lawsuit, any tort claim asserted against the Department of Defense, any sub-agencies, or its employees acting within the scope of their employment should be dismissed. Once

Semmerling's claims are properly construed under the FTCA against the United States, the claims must also be dismissed because: (1) Semmerling has failed to exhaust his administrative remedies; (2) the FTCA does not waive the United States' sovereign immunity for certain intentional torts (such as defamation) and torts occurring in a foreign country; (3) the individual defendants' conduct is protected under Illinois' absolute litigation privilege; and (4) the claims are also preempted by Semmerling's Title VII claim.

### A. Failure to Exhaust Administrative Remedies

The FTCA claims should be dismissed in the first instance on failure-to-exhaust grounds. Before bringing an action under the FTCA, a plaintiff must first exhaust administrative remedies by "present[ing] his claims to the appropriate agency within two years of the date that the claims accrue." *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) ("[T]he plaintiff may not bring [an FTCA] suit unless he has first presented his claim to the appropriate federal agency and that agency has denied the claim."); 28 U.S.C. § 2675(a). The complaint in this case does not allege that Semmerling ever presented the administrative claim required by the FTCA, and a search of the computerized databases of administrative claims for the Department of Defense reveals that Semmerling has not filed an administrative claim. Agency Declarations, Ex. A. Because this lawsuit was filed before the exhaustion of administrative remedies in violation of 28 U.S.C. § 2675(a), any FTCA claim should be dismissed. *See McNeil v. United States*, 508 U.S. 106, 112 (1993) (affirming dismissal where plaintiff filed suit before exhausting his administrative remedies).

Congress has made exhaustion of administrative remedies a mandatory if not jurisdictional prerequisite to suit. 28 U.S.C. § 2675; *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015); *Kanar v. United States*, 118 F.3d 527 (7th Cir. 1997); *McNeil*, 508 U.S. 106. The Seventh

Circuit has held that exhaustion in FTCA cases is a condition precedent to filing suit but is *not* jurisdictional. *See, e.g., Smoke Shop LLC v. United States,* 761 F.3d 779, 786 (7th Cir. 2014). However, that holding was likely overruled in 2015 by *Kwai Fun Wong, supra,* which noted that while the FTCA's statute of limitations for FTCA cases is found in 28 U.S.C. § 2401(b), "a different section of Title 28 confers power on federal district courts to hear FTCA claims." 135 S. Ct. at 1633 (citing § 1346(b)(1) ("district courts . . . shall have exclusive jurisdiction" over tort claims against the United States")). The Court thus held that "[n]othing conditions the jurisdictional grant on the limitations periods, or otherwise links those separate provisions. Treating § 2401(b)'s time bars as jurisdictional would thus disregard the structural divide built into the statute." *Id.* But § 1346(b) explicitly conditions district court's jurisdiction on the provisions of the FTCA, including § 2675. The exhaustion requirement in § 2675 is on the other side of the "structural divide" that the Supreme Court noted in *Wong* and thus should be considered a *jurisdictional* requirement. But this is not an issue that needs to be resolved to decide this motion. Semmerling's suit is subject to dismissal whether exhaustion is a jurisdictional requirement or a condition precedent. *See, e.g., Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000) (affirming district court's Rule 12(b)(6) dismissal because the plaintiff had not exhausted his administrative remedies prior to filing suit).

The complaint in this case does not allege that plaintiffs ever presented the administrative claim required by the FTCA. And a search of the computerized databases of administrative claims for the Department of Defense, United States Navy, United States Air Force, United States Army, and the Marine Corps reveals that neither Semmerling nor the Mercury Endeavor ever filed an administrative claim. Agency Declarations, Ex. A; *see Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (on motion to dismiss, court may look beyond complaint's

jurisdictional allegations to determine whether subject matter jurisdiction exists). Because this lawsuit was filed before the exhaustion of administrative remedies in violation of 28 U.S.C. § 2675(a), any FTCA claim should be dismissed. *See McNeil*, 508 U.S. at 107, 112 (affirming dismissal where plaintiff filed suit before exhausting his administrative remedies).

### B. The Tort Claims Are Barred Under the FTCA's Exceptions.

#### 1. The FTCA's Intentional Tort Exception Bars the Common-Law Claims.

Many of the allegations in Semmerling's complaint seek relief for intentional torts—defamation and intentional infliction of emotional distress. However, the FTCA bars "[a]ny claim arising out . . . libel, [or] slander . . . ." 28 U.S.C. § 2680(h). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Semmerling also alleges that Schwartz, Bormann, Perry, and Seeger defamed Semmerling when they repeated this information to other members of the defense team. Compl. ¶ 55; *see also id.* ¶ 70. But libel and slander suits against the United States are barred by 28 U.S.C. § 2680(h). *See, e.g., Figueroa v. United States Postal Service*, 165 F.3d 32, 1998 WL 846856, at *3 (7th Cir. Nov. 25, 1998). Thus, plaintiffs' defamation claims are barred by the FTCA's intentional tort exception.

Semmerling's intentional infliction of emotional distress claim is likewise precluded under the same exception. Although intentional infliction of emotional distress is not one of the intentional torts explicitly listed in § 2680(h), the Seventh Circuit has generally stated that the "government has not been consented to be sued for the intentional torts of its employees and agents." *LM ex rel. KM v. United States*, 344 F.3d 695, 698 (7th Cir. 2003). In addition, some courts have found that 28 U.S.C. § 2680(h)'s language excluding "from coverage 'any claim *arising out of*' any of the enumerated torts is [also] barred." *Koch v. United States,* 209 F. Supp.

7

2d 89, 94 (D.D.C. 2002). Thus, any claim "arising out of" a claim for defamation is barred, even if it is not explicitly titled as such. *See id.* Here, Semmerling's intentional infliction of emotional distress claim arises out of the same conduct that forms the basis of his defamation claims and, thus, the court should not entertain his intentional infliction of emotional distress claim. *See, e.g., O'Ferrell v. United States*, 253 F.3d 1257, 1265-66 (11th Cir. 2001); *Chisholm v. United States*, No. 4:10–CV–3732, 2012 WL 3930323, at *6-7 (S.D. Tex. Sept. 10, 2012); *Borawski v. Henderson*, 265 F. Supp. 2d 475, 484 (D.N.J. 2003).

### 2. The Foreign Soil Exception Bars Plaintiffs' Tort Claims.

Another FTCA exception also dooms Semmerling's common-law tort claims. The FTCA's waiver of sovereign immunity does not apply to "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). As such, any claim arising out of Guantanamo Bay, Cuba,[4] should be dismissed.

This primary conduct complained of—exposing Semmerling's sexual orientation to the accused and telling the accused that Semmerling was pursuing a romantic relationship with him—must have occurred at Guantanamo Bay. There are no allegations that suggest that Washington D.C. or Chicago was the focal point of this tortious activity nor can there be—the accused has been held at Guantanamo Bay since 2006. Semmerling also alleges that he was wrongfully ordered by Brigadier General Baker, through Schwartz and Bormann, to leave Guantanamo Bay. Compl. ¶

---

[4] Multiple courts have recognized that Guantanamo Bay is a foreign country for purposes of the FTCA. *See, e.g., Boumediene v. Bush*, 553 U.S. 723, 754 (2008) ("Cuba, not the United States, maintains sovereignty, in the legal and technical sense of the term, over Guantanamo Bay."); *Al Janko v. Gates*, 831 F. Supp. 2d 272, 284 (D.D.C. 2011) ("Indeed, Guantanamo fits well within the Supreme Court's 'foreign country' definition for purposes of the FTCA: it is a territory subject to the sovereignty of another nation." (internal quotation marks and citation omitted)); *Al-Zahrani v. Rumsfeld*, 684 F. Supp. 2d 103, 119 (D.D.C. 2010) ("The United States does not have sovereignty over Guantanamo in the 'legal and technical sense,' and as such, FTCA claims arising there are barred by the foreign country exception.").

46. As a result of these events, Semmerling claims that he suffered various injuries including among other things, that the statements suggested Semmerling's inability to perform his job duties for the defense team of the accused, the loss of his professional reputation, and severe and extreme emotional distress. *Id.* ¶¶ 59, 66, 74, 85.

Thus, because the conduct and injuries complained of occurred on foreign soil, Semmerling's common-law tort claims should be dismissed. *See, e.g., Brundage v. United States Information Agency*, 00-3124, 2000 WL 1909634, at * (7th Cir. Dec. 27, 2000) (defamation claim arising out of publication of a newspaper article in Malaysia was precluded under FTCA's foreign country exception); *Gross v. United States*, 771 F.3d 10, 12-13 (D.C. Cir. 2014) (foreign-country exception barred plaintiffs' negligent infliction of emotional distress claim); *Ziya v. Global Linguistic Solution*, 11-CV-01398, 2012 WL 1758611, at *1-2 (D. Or. May 15, 2012) (intentional infliction of emotional distress and slander and libel claims arising out of plaintiff translator's firing in Iraq excluded under foreign-country exception).

### C. Illinois' Absolute Litigation Privilege Precludes the Common-Law Claims.

The common-law tort claims also fail for the independent reason that they are barred by Illinois' broad absolute litigation privilege. Indeed, because the litigation privilege operates to shield defense attorneys Schwartz, Perry, and Seeger from a suit arising from the advice and communications provided to their client (the accused), the common-law claims should be dismissed.[5]

Illinois' absolute litigation privilege broadly shields attorneys from liability for defamatory communications made by them during the course of, and as part of, a judicial proceeding in which

---

[5] While the United States has not substituted itself in place of defendant Bormann and the instant motion is not brought on her behalf, Bormann's actions are also likely protected by Illinois' absolute litigation privilege.

they participate as counsel. *See O'Callaghan v. Satherlie*, 36 N.E. 3d 999, 1007-08 (Ill. App. 2015) (noting that this absolute privilege is generally based on Restatement of Torts (Second) § 586 (1977)). The privilege "protects anything said or written in the course of a legal proceeding. The only qualification to this privilege is that the communication pertain to the litigation." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (citation omitted); *see also Libco Corp. v. Adams*, 426 N.E. 2d 1130, 1132 (Ill. App. 1981) ("Out-of-court communications between attorneys are protected . . . as well as communications between attorneys and their clients.") (citations omitted).

In addition, Illinois law extends the privilege to claims other than defamation, as the protection would be "meaningless" if plaintiffs could avoid it by the "simple recasting of their cause of action." *Johnson v. Johnson & Bell, LTD*, 7 N.E. 3d 52, 56 (Ill. App. 2014) (absolute litigation privilege barred the plaintiff's negligent infliction of emotional distress claim); *see also Squires-Cannon v. Forest Preserve District of Cook Cty., Ill.*, No. 15 C 6876, 2016 WL 561917, at *8 (N.D. Ill. Feb. 12, 2016) (noting that the privilege has been applied to defamation, invasion of privacy, and negligent infliction of emotional distress claims and dismissing all claims against law firm with prejudice because lawyers were protected under the absolute litigation privilege); *O'Callaghan*, 36 N.E. 3d at 1009 (applying privilege to intentional infliction of emotional distress and strict liability claims based on both attorney communications and conduct). The rationale for this privilege "is to secure for attorneys as officers of the court the utmost freedom in representing clients." *Steffes*, 144 F.3d at 1074; *see also Popp v. O'Neill*, 730 N.E.2d 506, 510 (Ill. App. 2000) ("The general public policy underlying the absolute privilege is the need for the attorney to speak his mind fully and fearlessly when communicating with his client."). "All doubts are to be resolved in favor of finding that the privilege applies." *Steffes*, 144 F.3d at 1074.

The face of the complaint makes clear that the allegedly wrongful conduct—defamatory statements made to the accused and fellow members of the defense team—occurred during the course of the defense team's representation of the accused while at Guantanamo Bay. Despite the content of the alleged communications, public policy dictates that attorneys should be able to freely communicate with their clients. *See Popp*, 730 N.E. 2d at 510-11. And, while Semmerling alleges that the individual defendants' objective is "to ensure Semmerling never works on a capital or military defense team again," (Compl. ¶ 51), allegations of animus will not prevent the privilege from applying. *Steffes*, 144 F.3d at 1074 ("The absolute privilege is afforded even when malice is assumed to have motivated the attorney). At bottom, and regardless of the content of and motives for these statements, *all* of the communications forming the basis for Semmerling's claims in this case pertain to the defense attorneys' representation of the accused and, thus, the common-law tort claims should be dismissed because the attorneys are protected under the absolute litigation privilege.

**D.     The Common-Law Tort Claims Are Also Precluded by Title VII.**

Assuming that Semmerling is permitted to bring a Title VII claim (*see* Section II), Semmerling's common-law claims should be dismissed for the additional reason that they seek to redress alleged employment discrimination and, thus, are preempted by his Title VII claim. The Supreme Court has held that Title VII "provides the exclusive remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *see also Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) ("Federal employees must rely upon Title VII and other federal antidiscrimination statutes like ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination."). Under this principle, when "the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer,

11

Title VII preempts the non-Title VII claim." *Mathis v. Henderson*, 243 F.3d 446, 451 (8th Cir. 2001) (citation omitted). That is exactly the case here.

Semmerling's complaint focuses largely on his belief that he was unfairly treated due to his sexual orientation. In support of his purported Title VII claim, Semmerling incorporates paragraphs 1-57 of the complaint, and alleges that his "termination was predicated upon the basis of his sexual orientation." Compl. ¶ 77. In support of his defamation claims, Semmerling likewise incorporates the allegations of paragraphs 1-57, and alleges that the defamatory statements impute Semmerling's "inability to perform the duties [of] his employment . . . as a mitigation specialist because of his sexual orientation and that he was pursuing a homosexual interest with [the accused] as opposed to doing the work of an effective and professional mitigation specialist." Compl. ¶ 59; *see also* ¶¶ 80-89. These overlapping allegations indicate that Semmerling regards his employment discrimination and the common-law tort claims as arising from the same set of actions, which, thus, requires dismissal of the preempted defamation claims.

## II.     The Title VII Claim Should Be Dismissed.

### A. Semmerling Is Not an Employee of the Department of Defense.

Semmerling's Title VII claim should be dismissed because it is well-settled that only individual federal *employees*, not *contractors* or *companies*, such as Semmerling or The Mercury Endeavor, may utilize the provisions of Title VII.

In 1972, Congress amended Title VII by explicitly effecting a limited waiver of the United States' sovereign immunity with respect to employment discrimination. Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, § 11, 86 Stat. 103, 111-12 (codified at 42 U.S.C. § 2000e-16). The scope of the waiver extends to "personnel actions affecting employees or applicants for employment . . . in executive agencies as defined in section 105 of title 5, United

States Code . . . ." 42 U.S.C. § 2000e-16(a); *see also id.* at 2000e-16(c) (limiting right to file civil action to aggrieved employees or applicants for employment). The statute in turn defines "employee" as "an individual employed by an employer . . . ." 42 U.S.C. § 2000e(f). Semmerling was not a federal employee, and Title VII generally does not protect contractors. *See, e.g., Eghbali v. Dept. of Energy at Savannah River Nat'l Lab*, 90 F. Supp.3d 587 (D.S.C. 2015) (dismissing Title VII claim against former contractor because plaintiff was neither an employee of DOE nor an applicant for employment with DOE and thus was not entitled to relief under Title VII); *see generally Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991).

The complaint alleges that from June 2011 until October 2015, Semmerling "worked as a *contractor* under the umbrella of The Military Commission Defense Organization." Compl. ¶ 24 (emphasis supplied). Simply put, Semmerling was not a federal employee and has no Title VII claim. *See, e.g., Alam v. Miller Brewing Co.,* 709 F.3d 662, 667 (7th Cir. 2013) (affirming dismissal of Title VII claim where plaintiff failed to plead facts establishing that an employment relationship existed between plaintiff and defendant); *Linda Constr. Inc. v. City of Chi.*, 15 C 8714, 2016 WL 1020747, at *4 (N.D. Ill. March 15, 2016) (Plaintiffs' "relationship is best described as an independent contractor relationship, which is not covered by Title VII."); *Palmer v. Napolitano*, 867 F. Supp.2d 120, 123 (D.D.C. 2012) ("Given that Plaintiff asserts that she was a contractor and does not claim to have been an employee in either law or fact, that is the end of the matter."). In addition, the Mercury Endeavor cannot be considered an employee of the government because the plain language of the statute defines an employee as an "individual." 42 U.S.C. § 2000e(f). Thus, dismissal of Semmerling's Title VII claim with prejudice is warranted because these defects cannot be cured by amending the pleadings. *See, e.g., Linda Constr.*, 2016 WL 1020747, at *4.

**B.     The Title VII Claim Does Not Name the Proper Defendant and Is Untimely.**

Even if Semmerling were considered an employee of the Department of Defense at the pleadings stage, his Title VII claim should be dismissed for other reasons. As a preliminary matter, the "only proper defendant in a Title VII suit is the head of the agency accused of having discriminated against the plaintiff." *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984); 42 U.S.C. § 2000e-16(c). Further, Title VII does not provide for a cause of action against defendants in their individual capacities. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998); *Williams v. Banning,* 72 F.3d 552, 552 (7th Cir. 1995). Despite naming *thirteen* defendants, the complaint does not name the Secretary of Defense as a defendant. As such, the Title VII claim must be dismissed.

The Title VII claim is also untimely. The Seventh Circuit has recognized that "[f]ederal employees who seek to assert Title VII claims must exhaust the administrative remedies available to them in a timely fashion before they may assert their claims in a lawsuit." *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001). Under EEOC regulations, "[a]ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). The complaining party "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). This 45-day window acts as a statute of limitations and is a prerequisite to a Title VII suit based on such claims. *See Smith v. Potter*, 445 F.3d 1000, 1006 n.14, 1007 (7th Cir. 2006) (stating that failure to meet with EEO counselor within 45 days "equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government) *overruled in part on*

*other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); *see also Gibson v. West*, 201 F.3d 990, 993-94 (7th Cir. 2000); *Rennie v. Garrett*, 896 F.2d 1057, 1062-63 (7th Cir. 1990). Semmerling did not timely complain.

Semmerling does not assert that he properly exhausted his administrative remedies as to his Title VII claim, nor can he. Semmerling was terminated and ordered to leave Guantanamo on October 23, 2015. Compl. ¶ 46. Semmerling alleges that he learned over six months later, on April 28, 2016, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Semmerling further alleges that he "verified th[is] information with members of the defense team on approximately June 17, 2016." *Id.* ¶ 49. Semmerling first contacted an EEO counselor on August 12, 2016. Sullivan Decl., Ex. B, ¶ 5. Put simply, Semmerling learned of the defendants' alleged wrongdoing on April 28, 2016, yet did not contact an EEO counselor for 106 days. And, even assuming, *arguendo*, that Semmerling did not actually learn of the discriminatory conduct until June 17, 2016—the date he "verified" the alleged wrongdoing—he did not contact an EEO counselor until 56 days after the verification. Either way, he was too late. *See, e.g., Lollis v. Donahue*, 09 C 4967, 2012 WL 33005, at *4 (N.D. Ill. Jan. 6, 2012) (denying claims regarding incidents that took place more than 45 days prior to plaintiff's meeting with EEO counselor); *Kind v. Gonzalez*, 05 C 0793, 2006 WL 1519579, at *4-5 (N.D. Ill. May 30, 2006) (leave to amend to bring an additional discrimination claim denied where plaintiff did contact EEO counselor within 45 days of alleged discriminatory conduct).

As such, Semmerling's failure to contact an EEO counselor within 45 days of learning of his alleged discrimination warrants dismissal of his Title VII claim.

**Conclusion**

For the above reasons, the court should dismiss this suit against all of the United States defendants, including the United States of America; Michael A. Schwartz; Brigadier General John G. Baker; Major Matthew Seeger; Edwin Perry; the Military Commission Defense Organization; the Office of Military Commissions; the Department of Defense; Sean Stackley, Acting Secretary of the United States Navy; Heather Wilson, Secretary of the United States Air Force, Ryan McCarthy, Acting Secretary of the United States Army; and Robert Neller, Commandant of the United States Marine Corps.

Respectfully submitted,

JOEL R. LEVIN
Acting United States Attorney

By: s/ Kathleen M. Flannery
    KATHLEEN M. FLANNERY
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-7223
    kathleen.flannery@usdoj.gov