UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIM JON SEMMERLING and<br>THE MERCURY ENDEAVOR, LLC,<br><br>      Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>      Defendants. | No. 17 C 3021<br><br>Judge Gettleman |

**UNITED STATES DEFENDANTS'
<u>MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY</u>**

**Introduction**

If this civil suit is not dismissed, it should be stayed until suspected 9/11 terrorist Walid bin Attash has been tried for the crimes he is accused of. Numerous factors weigh in favor of staying this civil proceeding, but staying this lawsuit is most warranted because citizens of the United States have a compelling and necessary interest in having the prosecution of bin Attash proceed to trial without further delay. This interest alone outweighs the interests of plaintiffs Tim Semmerling and his company, The Mercury Endeavor, LLC (collectively, "Semmerling"), in expeditiously moving forward with this civil suit.

**Background**

On September 11, 2001, the United States suffered the worst terrorist attack on domestic soil in its history. A total of 2,976 people lost their lives. Walid bin Attash (the "accused") is alleged to have been a conspirator of the attacks and is charged with the capital offenses of conspiracy, attacking civilians, murder in violation of the law of war, hijacking an aircraft, and

terrorism.[1] Among other actions, he is alleged to have provided training to and facilitated travel for at least two of the 9/11 hijackers, traveled throughout Asia to observe and test airport security (by bringing a knife onto numerous flights), and provided a written report to al Qaeda leadership on his findings. Charge Sheet at 17-19, 23. The accused is detained in Guantanamo Bay, Cuba, and has appeared numerous times in pretrial hearings before the Military Commission conducted at the Naval Station, Guantanamo Bay, Cuba (the "Military Commission").

Semmerling served as a mitigation specialist on the legal defense team for the accused until his dismissal in 2015. Compl. ¶ 24. Semmerling has now filed suit against a myriad of defendants alleging that the United States, the Department of Defense, organizations with the Department of Defense, and individuals who are (or have) served as lawyers on the criminal defense team for the accused defamed Semmerling, intentionally inflicted emotional distress upon him, and violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*.[2] While the United States defendants have moved to dismiss the complaint on a variety of grounds, the United States defendants request, in the alternative, for the court to stay this lawsuit pending the resolution of the accused's criminal proceedings.

**Argument**

This lawsuit should be stayed pending the resolution of the accused's criminal proceedings before the Military Commission. Many factors weigh in favor of staying this civil suit including: (1) the criminal and civil proceedings share significant overlap; (2) the accused has been charged and arraigned, and the prosecution is seeking to try the accused by January 2019; (3) although

---

[1] *See* Charge Sheet, at 6, available at: http://www.mc.mil/Portals/0/pdfs/KSM2/KSM%20II%20(Referred%20Charges).pdf.

[2] For a complete recitation of the facts alleged in the plaintiffs' complaint, the United States defendants refer the court to the factual background set forth in its pending memorandum in support of its motion to dismiss. *See* Dkt. 18, Mem. in Supp., at 2-4.

2

Semmerling may suffer prejudice if his suit is stayed, any prejudice may be minimized if he chooses to pursue his administrative claim with the appropriate federal agency; (4) if this lawsuit proceeds to discovery, the accused's defense may suffer adverse consequences, resulting in significant delays before the Military Commission; and (5) a stay of this lawsuit will conserve judicial resources. Lastly, special circumstances exist—the need for the United States to try a conspirator of the 9/11 terrorist attacks without further delay—that make it necessary to stay these civil proceeding to avoid substantial and irreparable prejudice or injury. Thus, a stay of the civil suit is warranted.

District courts have an incidental power to stay proceedings stemming from their inherent authority to manage their dockets. *See, e.g., United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Landis v. North Am. Co.,* 299 U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."). Indeed, courts have broad discretion to enter a stay in the interest of justice. *Benevolence Int'l. Found., Inc. v. Ashcroft,* 200 F. Supp. 2d 935, 938 (N.D. Ill. 2002) (citing *Kordel*, 397 U.S. at 12 n.27); *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (if a plaintiff files a civil claim "related to rulings that will likely be made in a pending or anticipated criminal trial . . . it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended") (citations omitted).

Courts in this district have identified, in varying formulations, a number of factors to consider in determining whether to stay a civil proceeding pending the outcome of a related criminal case. Those factors have included: "(1) the extent to which the issues in the criminal and

civil matters overlap and whether the government initiated both proceedings; (2) the posture of the criminal proceedings; (3) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (4) the burden which any particular aspect of the proceedings may impose on defendants; (5) the convenience of the court in the management of its cases, and the efficient use of judicial resources; and (6) the interests of persons not parties to the civil litigation and of the public in pending civil and criminal litigation." *United States v. All Meat and Poultry Products*, No. 02 C 5145, 2003 WL 22284318, at *2 (N.D. Ill. Oct. 3, 2003); *see also Hollinger Int'l Inc. v. Hollinger, Inc.,* No. 04 C 698, 2008 WL 161683, at *2 (N.D. Ill., Feb. 28, 2006); *Benevolence*, 200 F. Supp. 2d 935, 938 (N.D. Ill. 2002); *Cruz v. Cty. of Dupage*, 96 C 7170, 1997 WL 370194, at *2 (N.D. Ill. June 27, 1997).

"In effect, the court must balance the civil plaintiff's right to prepare his case promptly against the public interest in withholding full disclosure sought by the civil plaintiff." *Benevolence*, 200 F. Supp. 2d at 938 (citing *Campbell v. Eastland,* 307 F.2d 478, 490 (5th Cir. 1962)). Critically, a stay is appropriate where "special circumstances" exist that make it necessary to "avoid substantial and irreparable prejudice" or injury. *Benevolence,* 200 F. Supp. 2d at 938; *see also United States v. Certain Real Prop., Commonly Known as 6250 Ledge Rd., Egg Harbor, Wis.*, 943 F.2d 721, 729 (7th Cir. 1991).

First, while the civil and criminal proceedings are not strictly parallel, there is significant overlap between the two cases. Semmerling's civil action concerns communications between the defense attorneys and their client (the accused). *See, e.g.,* Compl. ¶¶ 34, 50, 55, 57, 58, 62. The civil action also concerns communications between attorneys on the defense team and with Semmerling regarding the defense of the accused and sensitive matters concerning Semmerling's

position as a mitigation expert. *Id.* ¶¶ 35, 37, 43, 44. For the United States defendants to defend against Semmerling's claim in this lawsuit if the case is not promptly dismissed, the defense team may have to reveal information that could jeopardize the criminal defense of the accused.

In addition, issues raised in this lawsuit and the circumstances of Semmerling's dismissal have also been raised before and ruled on by the Military Commission. For example, following the filing of this lawsuit, the defense team requested that the Military Commission abate the 9/11 proceedings until resolution by this court of the motion to dismiss in this lawsuit. *See* Motion to Abate Commission Proceedings, Ex. A. The defense team argued that until *this* court ruled on the motion to dismiss, the defense team operates "under a potential conflict" before the Military Commission. *Id.* at 2. The defense team asserted that if this court denies a motion to dismiss and the parties proceed to discovery, a conflict could arise "between defense counsel and [the accused] because [the accused], all of his defense counsel, some counsel for other codefendants, the Military Judge, the Chief Defense counsel and members of OMC would likely be witnesses." *Id.* at 2-3. The defense team concluded that it "is possible that [the accused] may take a different factual position than that of his defense counsel or that of defense counsel for the co-defendants or the Chief Defense Counsel." *Id.* at 3. Following oral arguments on the motion, Military Commission Judge Pohl denied the defense team's motion to abate the 9/11 proceedings. *See* Transcript of Proceedings, Ex. B, at 15633-37 (oral ruling denying motion); *see also id.* at 15583-604 (argument on the motion), 15626-28 (additional argument on the motion). However, in denying the motion, the judge noted that "the commission is deciding this issue on the current state of the record. If additional relevant facts come to light, the defense is free to supplement its motion and request reconsideration." *Id.* at 15637. Because there is significant overlap between the instant civil suit and the accused's criminal proceedings, this factor weighs in favor of a stay.

Second, because the criminal proceedings before the Military Commission are progressing, this factor also weighs in favor of granting a stay. Semmerling's lawsuit is in its infancy, whereas the prosecution of the accused has been pending for years. Courts have declined to stay civil proceedings that might impact a criminal matter when no indictment has been handed down out of fear a stay may become indefinite, *F.T.C. v. Pac. First Ben., LLC*, 361 F. Supp. 2d 751, 755 (N.D. Ill. 2005); however, in this case, the accused has been charged for his crimes. *See* Government Supplement to Renewed Motion for a Trial Scheduling Order, Ex. C, at 2. In addition, the prosecution has *requested* a trial date of January 2019 (although no trial date has been set). *Id.* at 1. While the prosecution of the largest terrorist attack on American soil has been a lengthy process, the criminal proceedings against the accused are moving forward. Thus, this factor weighs in favor of a stay. *See, e.g., All Meat & Poultry Products*, 2003 WL 22284318, at *3 ("This factor weighs in favor of a stay, as courts generally require that an indictment be issued before they will grant a stay.").

Third, any prejudice Semmerling may suffer due to the imposition of a stay may be minimized by Semmerling himself. As the United States defendants explain in their memorandum in support of their motion to dismiss, Semmerling has yet to present a claim for damages to the appropriate federal agency, as the Federal Tort Claims Act requires. *See* Memo., at 5-7; 28 U.S.C. § 2675. Even if the court stays this civil suit, Semmerling is not precluded from pursuing his administrative remedies. Thus, regardless of whether a stay is imposed, Semmerling may be able to obtain the relief he requests and thus, the prejudice to him will be diminished.

Fourth, the pendency of this civil suit could cause an extreme burden on the accused. Specifically, as the defense team's motion to abate the proceedings made clear, if this case moves into discovery, a conflict could arise that would force the defense attorneys to seek to withdraw as

6

counsel before the Military Commission. Motion to Abate at 2-3. Further, if members of the defense team are forced to withdraw from the criminal proceedings, the loss of counsel (who have been working for many years in preparing the accused's capital defense) could result in significant delays before the Military Commission. In addition, as would occur with any accused, revelation of confidential conversations concerning the accused or attorney-client privilege information has the potential to undermine the relationship between counsel and the accused and impact the defense team's ability to defend him at trial. Thus, because the accused's defense before the Military Commission would be severely affected if a stay is not imposed, this factor weighs in favor of granting the stay.

Fifth, if the civil suit goes forward there may be a substantial burden on this court and the use of judicial resources. Discovery regarding the defense of a Guantanamo Bay detainee accused of being a conspirator of the 9/11 terrorist attacks *may* implicate highly classified and sensitive issues of national security including top-secret information that could be prohibited from public disclosure by the state-secrets doctrine. *See, e.g., Terkel v. AT&T Corp.,* 441 F. Supp. 2d 899, 908 (N.D. Ill. 2006) ("The state secrets privilege is a common law evidentiary privilege that allows the government to 'block discovery of any information that, if disclosed, would adversely affect national security.'") (citations omitted). The difficulty in drafting a discovery plan that would allow Semmerling's claims to be fully explored by both parties while simultaneously protecting privileged information—that may be potentially damaging to national security—could be extreme. *See, e.g., Quinn v. Guerrero*, No. 4:09CV166, 2010 WL 412901, at *3 (E.D. Tex. Jan. 28, 2010), *report and recommendation adopted,* No. 4:09CV166, 2010 WL 653477 (E.D. Tex. Feb. 23, 2010) ("The Court simply cannot fathom how it could construct a discovery plan that would balance the need to protect the interests and rights of all parties in the criminal matter with the need to have

7

productive and relevant discovery in the civil matter."); *Prosper v. Martin*, No. 17-20323, 2017 WL 958588, at *2 (S.D. Fl. March 10, 2017) ("Proceeding with discovery while an investigation remains open but inaccessible to the parties makes it impossible for the Court to enter a meaningful scheduling order."); *see also Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters and in ruling on motions under the civil discovery procedures, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases."). Thus, judicial economy would be better served by the entry of a stay in the civil proceedings.

Finally, and most importantly, the United States (and the public it serves) has an undeniably strong interest in proceeding expeditiously with the prosecution of an individual suspected of planning the most significant terrorist attacks ever to occur on U.S. soil. The interest of justice and the public at large in having the prosecution of the accused finally proceed to trial without further delay outweighs Semmerling's interest in moving forward with his civil suit. In short, the United States respectfully asserts that "special" and extraordinary circumstances exist that make it necessary to stay these civil proceeding to "avoid substantial and irreparable prejudice" or injury. *Benevolence,* 200 F. Supp. 2d at 938.

## Conclusion

For the above reasons, and in the event the court does not dismiss this civil suit, the court should stay this lawsuit pending the resolution of Walid bin Attash's criminal proceedings before the Military Commission.

Respectfully submitted,

JOEL R. LEVIN
Acting United States Attorney

By: s/ Kathleen M. Flannery
 KATHLEEN M. FLANNERY
 Assistant United States Attorney
 219 South Dearborn Street
 Chicago, Illinois 60604
 (312) 353-7223
 kathleen.flannery@usdoj.gov